IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:24-cv-01459-SKC-KAS

MIKE BOULTER,
RALPH NIX PRODUCE, INC., and
BARCLAY FARMS, LLC, on behalf of themselves
and classes of similarly situated persons,

    Plaintiffs,

v.

KERR-MCGEE OIL & GAS ONSHORE, LP,

    Defendant.

---

## ORDER DENYING MOTION TO DISMISS (DKT. 8)

---

This case (*Boulter VI*) has a long history but presents a finite issue—did Defendant Kerr-McGee Oil & Gas Onshore LP breach its oil leases with Plaintiffs when it deducted certain charges from royalty payments paid to them involving their oil wells? Plaintiffs filed their First Amended Class Action Complaint ("AC") (Dkt. 3) claiming breach of their oil leases and seeking declaratory judgment. This case is before the Court after it ordered Plaintiffs' claims against Kerr-McGee severed from their claims against another defendant. *Boulter, et al. v. Noble Energy Inc., et al.*, No. 1:24-cv-00710-SKC-KAS (*Boulter V*), ECF Dkt. 33 (D. Colo. May 22, 2024) (order

severing Plaintiffs' claims against Kerr-McGee).[1,2]

Kerr-McGee has filed a Motion to Dismiss (Dkt. 8) seeking dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) and arguing Plaintiffs allege insufficient facts to demonstrate a breach of contract. Plaintiffs responded (Dkt. 13) and Kerr-McGee replied (Dkt. 20). The Court has reviewed the Motion, the related briefing, the docket, and the relevant law. No hearing is necessary. The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). For the following reasons, the Motion is denied.

## A. LEGAL PRINCIPLES

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept

---

[1] The predecessor cases in this saga include the following: *Boulter, et al. v. Noble Energy, Inc. et al.*: 1:20-cv-00861-WJM-SBP (D. Colo.) (*Boulter I*); 1:21-cv-01346-RM-KLM (D. Colo.) (*Boulter II*); 21-1384 (10th Cir.) (*Boulter II Appeal*); 1:21-cv-03500-RM-SKC (D. Colo.) (*Boulter III*); 22-1170 (10th Cir.) (*Boulter III Appeal*); 1:22-cv-01843-DDD-KAS (D. Colo.) (*Boulter IV*); 23-1118 (10th Cir.) (*Boulter IV Appeal*); and 1:24-cv-00710-SKC-KAS (D. Colo.) (*Boulter V*).

[2] The AC alleges its breach of contract claims on behalf of Plaintiffs and similarly situated classes of plaintiffs. Plaintiffs' allegations concerning their proposed classes are not currently before the Court.

as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B. FACTUAL BACKGROUND

Taking the well-pleaded factual allegations as true for purposes of analyzing the Motion, the Court discerns the following relevant facts.

3

In 1970 and 1980, Plaintiffs and Kerr-McGee entered various oil and gas leases through their respective predecessors in interest. Dkt. 3, ¶¶14-15, 17-18, 35-36. Plaintiffs, who owned the land, leased their oil and gas mineral rights to Kerr-McGee. The leases had slightly differing provisions regarding Kerr-McGee's payment of royalties on oil to Plaintiffs, which result in two proposed subclasses here.

Two leases entered on July 1, 1970, provide for royalties to be paid as follows:

> To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one eighth (1/8th) part of all oil produced and saved from the leased premises.

*Id.* at ¶16. Two other leases entered on June 18, 1980, provide,

> To deliver to the credit of the lessor, free of cost, in the pipe line to which Lessee may connect wells on said land the equal one-eighth (1/8) part of all oil produced and saved from the leased premises.

*Id.* at ¶19. These two provisions comprise Plaintiffs' proposed Subclass I claims. The Court refers to these two substantially similar clauses as the "Subclass I Clause."

This case also involves a lease entered on February 5, 1970, which provides,

> The lessee shall deliver to lessor as royalty, free of cost, on the lease, or into the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.

*Id.* at ¶37. Plaintiffs' proposed Subclass II claims rely upon this provision, which the Court refers to as the "Subclass II Clause."[3]

---

[3] While Plaintiffs did not attach the oil leases to the AC, Kerr-McGee provided them

4

Common to the allegations regarding the payment of royalties, Plaintiffs allege that since April 1, 2014, Kerr-McGee "has consistently deducted from the sales price [or the market price] of the oil, various costs related to transporting the oil from the well to a transportation pipeline and various self-described 'other costs' related to transporting the oil to a delivery point where the oil has been sold to third parties for a sales [or market] price." *Id.* at ¶¶20, 38. These "costs which Kerr-McGee improperly deducted from the selling price – which is equivalent to the market price – of the oil include, but are not limited to, costs which Kerr-McGee itself describes as gathering, transportation, and other deductions." *Id.* at ¶¶21, 39. Plaintiffs further allege these deductions are not permitted under the royalty provisions of any of the leases, and they have suffered damages because of these deductions. *Id.* at ¶¶22-23, 40-41.

## C. ANALYSIS

Colorado law controls this case. Under Colorado law, oil and gas leases are contracts that must be analyzed "applying the fundamentals of contract law to the special context of an oil and gas, lessor-lessee agreement." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Crestone Peak Res. Operating LLC*, 538 P.3d 745, 750 (Colo. 2023)

---

with its Motion. The Court may consider the leases without converting the Motion to a motion for summary judgment because they are referred to in the AC, they are central to Plaintiffs' claims, and Plaintiffs do not contest their authenticity. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citation omitted) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

5

(citing *Davis v. Cramer*, 808 P.2d 358, 359 (Colo. 1991)). To establish a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a contract; (2) performance by them or some justification for their nonperformance; (3) failure to perform by defendant; and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Kerr-McGee challenges only the third element.

Contract interpretation is a matter of law for the court in the absence of ambiguity in the contract. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). Contract interpretation may become an issue of fact only if the court determines a particular contract provision is ambiguous. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996). "The primary goal of contract interpretation is to determine the intent of the parties . . . ," which is mainly derived from the language of the contract itself. *Ad Two*, 9 P.3d at 376. "Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Id.* A contract is ambiguous if it is susceptible on its face to more than one reasonable interpretation, and absent an ambiguity, the court cannot look beyond the four corners of the document to determine the meaning intended by the parties. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059-60 (Colo. 2005); *Ad Two*, 9 P.3d at 376-77. Oil and gas leases, however, must be strictly construed against the lessor. *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 901 (Colo. 2001) (surveying cases).

Kerr-McGee argues the plain language of the royalty provisions determines the physical point at which it must pay the required royalty—"to deliver lessor's share of produced oil, free of cost, to a designated location." Dkt. 8, p.5. That location, according to Kerr-McGee, is "in the pipe line to which [Kerr-McGee] may connect wells on said land." *Id.* at p.6; *see also id.* at p.10. And it contends it is free to charge costs downstream from that point.

The difficulty here is that the royalty provisions are not as plain as Kerr-McGee suggests.[4] "Specifically with respect to oil and gas leases, 'a royalty clause should be construed in its entirety and against the party who offered it, and in light of the fact that the royalty clause is the means by which the lessor receives the primary consideration for a productive lease.'" *Rogers*, 29 P.3d at 898. While the parties seem to agree that "free of cost" means that no deductions can be taken against Plaintiffs' royalties, they disagree over what "free of cost" modifies in their contracts. It appears Kerr-McGee interprets the phrase to mean that no deductions can be made prior to the oil entering the pipeline (Dkt. 8, p.5). By contrast, Plaintiffs appear to argue "free of cost" means no deductions may be made at all, or at least post-production. Dkt. 13, pp.6-7. When construed against Kerr-McGee, at this stage of the case, the Court cannot say that the plain language of the Subclass I Clause

---

[4] Just as parties have contested what must be done to put gas into a marketable condition, oil production apparently may also require multiple steps. *See Washington Cnty. Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 148 (Colo. 2005) (explaining steps taken on a leasehold to prepare unprocessed oil to make it saleable).

7

plainly determines the point at which production (or post-production) costs may be deducted from the royalties in order to find the AC fails to state a claim.

The royalty language of the Subclass II Clause is even more problematic. That clause provides, "The lessee shall deliver to lessor as royalty, free of cost, *on the lease, or into the pipe line* to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, *or* at the lessee's option may pay to the lessor for such one-eighth royalty the *market price for oil of like grade and gravity* prevailing on the day such oil is run into the pipe line or into storage tanks." Dkt. 3, ¶37 (emphasis added). The first portion of this clause sets multiple points at which the "free of cost" language could be applied. And, analyzing similar language, the *Rogers* Court explained that the terms "at the well" or at the "mouth of the well" were silent concerning royalty calculations and what costs could be deducted, in part because of unclear understandings of the meaning of gross proceeds, market value, proceeds, market price, and proceeds. *Rogers*, 27 P.3d at 897-98. Likewise here, the second portion of the royalty provision is affected by the meaning of "market price." *See id.*

The parties spend significant time arguing over whether the implied covenant to market recognized under Colorado law applies. But Kerr-McGee does not explain, if it applies, how it does or the resulting outcome. Thus, having found the plain language of the royalty clauses are ambiguous, the Court need go no further. Whether the implied covenant to market applies—and if so, how—is for this Court's later

8

determination after discovery is complete.[5] Moreover, even if the Court were to find that the covenant applies, Colorado courts are clear that determining marketability is a factual inquiry. *See id.* at 905 ("[T]he determination of marketability is a question of fact."); *see also Crichton v Augustus Energy Res., L.L.C.*, No. 15-cv-00835-KLM, 2017 WL 4838735, at *3 (D. Colo. Oct. 26, 2017) ("[B]ecause Plaintiffs' leases are silent regarding post-production wellhead deductions, the leases at issue in this action contain implied covenants to market and the point of marketability of the gas produced by Defendant is a question of fact with respect to each specific lease.").

For all of these reasons, the contracts are ambiguous. And given their ambiguity, Kerr-McGee has failed to meet its burden to show the AC fails to state a claim under Rule 12(b)(6). The Motion is denied.

## D. DOCUMENT DISPUTE

The Court further addresses the parties' various motions concerning documents Plaintiffs seek to utilize here that Kerr-McGee produced in *Boulter I* under a protective order entered in that case. Because the parties' arguments

---

[5] The Court, in its non-exhaustive research, has not located a Colorado case analyzing the implied covenant to market in the context of an oil lease. But it also notes Colorado cases state the implied covenant to operate diligently and prudently, upon which the covenant to market is based, applies to both oil and gas leases. *See, e.g., Rogers*, 29 P.3d at 902 ("Under Colorado law, the duty to market is a covenant contained in every oil and gas lease."); *cf. Graefe & Graefe, Inc. v. Beaver Mesa Expl. Co.*, 635 P.2d 900, 903 (Colo. App. 1981) (applying implied covenants of development and exploration to oil lease).

concerning these documents are currently before the *Boulter I* court, this Court declines to address the substance of these motions. Instead, the Court denies the *In Camera* Motion (Dkt. 14), without prejudice, grants (subject to reconsideration on a later motion) the Motion to Restrict (Dkt. 15), and denies the Motion to Strike (Dkt. 19), without prejudice.[6]

*   *   *

For the reasons shared above, the Court ORDERS the following:

1. Kerr-McGee's Motion (Dkt. 8) is DENIED;

2. Plaintiffs' *In Camera* Motion (Dkt. 14) (publicly available version at Dkt. 17) is DENIED WITHOUT PREJUDICE;

3. Plaintiffs' Motion to Restrict (Dkt. 15) is GRANTED (subject to reconsideration on a later motion); the Clerk of Court is ORDERED to maintain Level 1 Restriction for the *In Camera* Motion and its exhibits;

4. Kerr-McGee's Motion to Strike (Dkt. 19) is DENIED WITHOUT PREJUDICE; and

5. The parties shall file a Joint Status Report on the status of Kerr McGee's Motion to Enforce Protective Order upon the earlier of the following to

---

[6] Because the sentence that Kerr-McGee sought to strike from Plaintiffs' Response to the Motion argued facts beyond the AC, the Court ignored that sentence in its analysis. And the Court sees nothing troubling in allowing it to remain in the public docket since Kerr-McGee's Motion to Strike, also publicly available, specifically quotes the sentence. *See* Dkt. 19, p.14.

occur: (a) a ruling by the *Boulter I* court on that Motion, or (b) June 5, 2025.

DATED: March 18, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge